IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SHERAH JOHNSTON                                                    PLAINTIFF

        v.                        Civil No. 4:13-cv-0493

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                     DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Sherah Johnston, brings this action pursuant to § 405(g) of Title II of the Social

Security Act, seeking judicial review of a decision of the Commissioner of the Social Security

Administration ("Commissioner") denying her claim for a period of disability, disability insurance

benefits ("DIB") and supplemental security income ("SSI") under the provisions of Titles II and

XVI of the Social Security Act ("Act").  The Parties have consented to the jurisdiction of a

magistrate judge to conduct any and all proceedings in this case, including conducting the trial,

ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 7).[1]

Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final

judgment in this matter.

I.      **Background**:

Plaintiff protectively filed an application for DIB and SSI on August 22, 2011, alleging an

onset date of February 1, 2011, due to seizures.  (Tr. 147-149, 228).  For DIB purposes, Plaintiff's

---

[1]

The docket numbers for this case are referenced by the designation "ECF No. __."  The transcript
pages for this case are referenced by the designation "Tr."

date last insured was December 31, 2012. (Tr. 13, 228).  Plaintiff's claim was denied initially and

on reconsideration.  An administrative hearing was held on July 30, 2012, at which Plaintiff appeared

with counsel and testified.  (Tr. 31-48).  A Vocational Expert ("VE") was also present and testified.

(Tr. 42-48).

The Administrative Law Judge ("ALJ") determined Plaintiff had the severe impairment of

"seizure disorder." (Tr. 14, Finding 3).  After reviewing all of the evidence presented, however, the

ALJ determined Plaintiff's impairments did not meet or equal the level of severity of any impairment

listing.  (Tr. 17-18, Finding 4).

The ALJ evaluated Plaintiff's subjective complaints and determined her RFC.  (Tr. 18-24).

The ALJ first evaluated Plaintiff's subjective complaints and found they were not entirely credible.

(Tr. 19, 23-24).  The ALJ then found Plaintiff retained the residual functional capacity ("RFC") to

"perform a full range of work at all exertional levels as long as she avoids vibration, fumes, odors,

hazards, heights, moving machinery or any work that requires commercial driving.  In addition, the

claimant may never climb ropes, ladders, or scaffolds." (T. 18,  Finding 5).

With the help of a VE, the ALJ evaluated Plaintiff's past relevant work ("PRW").  (Tr. 23,

42-48).  The ALJ determined Plaintiff could perform her PRW as a cashier and department manager.

(Tr. 24,  Finding 6).  The ALJ concluded Plaintiff was not disabled.  (Tr. 24-25, Finding 7).

Plaintiff then requested a review of the hearing decision by the Appeals Council on August

14, 2012, which denied the request on August 25, 2013.  (Tr. 3-5).  On October 1, 2013, Plaintiff

filed the present appeal.  (ECF No. 1).  The Parties consented to the jurisdiction of this Court on

December 3, 2013.  (ECF No. 7).  Both Parties have filed appeal briefs, and the case is ready for

decision.  ( ECF Nos. 10, 11).

II.  **Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough a reasonable mind would find it adequate to support the Commissioner's decision.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record to support a contrary outcome, or because the Court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

To determine whether a claimant suffers from a disability, the Commissioner uses a five-step sequential evaluation.  She determines: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the RFC to perform her PRW; and (5) if the claimant cannot perform the past work,

the burden shifts to the Commissioner to prove there are other jobs in the national economy the

claimant can perform.  20 C.F.R. §§ 404.1520(a)-(f); *Cox*, 160 F.3d at 1206.  The fact finder only

considers the plaintiff's age, education, and work experience in light of her RFC if the final stage of

this analysis is reached.  *See* 20 C.F.R. §§ 404.1520, 416.920.

## III.   <u>Discussion</u>:

Plaintiff raises the following arguments on appeal: the ALJ (1) failed to properly consider

her non-exertional impairments in combination with her seizure disorder, (2) erred in his credibility

determination, and (3) failed to pose a proper hypothetical question to the VE.  (ECF No. 10 at 1).[2]

### A. Combination of Impairments

Plaintiff argues the ALJ erred by not considering limitations from her alleged non-exertional

conditions of "dizziness, profound fatigue, severe headaches, stress, shortness of breath, and

obstructive sleep apnea," in combination with the severe impairments he found.  (ECF No. 10 at 13).

The Social Security Act requires the ALJ to consider the combined effect of all of the

claimant's impairments without regard to whether any such impairment, if considered separately,

would be of sufficient severity.  *See* 20 C.F.R. § 404.1523 (2006). The ALJ's decision reviewed

Plaintiff's medical history in significant detail and considered the non-exertional effects of her

seizure and sleep condition claims.  (Tr. 14-17, 19-24).  As the ALJ noted, "seizure precautions for

---

[2]

   Plaintiff also has a section titled "the ALJ failed to fully and fairly develop the record,"
   but the argument within does not allege any error in the development of the record.  (ECF
   No. 10 at 17-18).  There is no reason to remand unless there is a demonstration of
   unfairness or prejudice by a failure to develop the record.  *See Onstad v. Shalala*, 999
   F.2d 1232, 1234 (8th Cir. 1993).  As the Defendant points out in her brief, this section is
   a disagreement with the ALJ's evaluation of Plaintiff's Function Report.  (ECF No. 11 at
   11-12).  Regardless, the Court has reviewed the entire record and finds it was adequately
   developed.

the claimant in the workplace are entirely reasonable considering her history." (Tr. 23). The ALJ's inclusion of seizure precautions in the RFC accounted for her documented non-exertional limitations. (Tr. 18). The ALJ also stated Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 17, Finding 4). The ALJ concluded, "after consideration of the entire record," the Plaintiff had the RFC to perform a full range of work. (Tr. 18, Finding 5).

These statements are sufficient under Eighth Circuit precedent to establish the ALJ properly considered the combined effect of a claimant's impairments. *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994). Thus, pursuant to the Eighth Circuit's holding in *Hajek*, this Court finds the written decision sufficiently indicated the ALJ properly considered the combined effect of Plaintiff's impairments, and the ALJ properly considered the severity of the combination of Plaintiff's impairments. *See Id.*

The record also shows the conditions Plaintiff listed in her brief were not severe impairments. Plaintiff did not allege any specific condition in her disability application as a basis for her disability, and she testified at her hearing a seizure or narcolepsy disorder was her only limiting condition. (Tr. 37, 229). On her Pain Questionnaire, Plaintiff stated she did not suffer from unusual fatigue. (Tr. 197). The only evidence she had chest pain were ER visits for flu and mild cough symptoms, which did not require follow-ups. (Tr. 378-380, 384). The only mention of dizziness in the record is in a March 26, 2000 ER admission note, when she first complained of a seizure, but her physician indicated her dizziness may have been attributable to her diet and weight loss supplements. (Tr. 561-562). Plaintiff has not shown any medical evidence to prove her non-exertional conditions caused more than minimal functional limitations. *See* 20 C.F.R. § 416.924(c)*; see also Neal ex. rel. Walker*

-5-

*v. Barnhart*, 405 F.3d 685, 688 (8th Cir. 2005).   Accordingly, the Court finds the ALJ's step two determination was based on substantial evidence.

### B. Listed Impairments

Plaintiff believes her undiagnosed narcolepsy is equivalent to an impairment in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (ECF No. 10 at 10-13).  To equal a listing, the medical findings must be "at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526(a).  A claimant's impairments must meet or equal all of the specified medical criteria in a particular listing for the claimant to be found disabled at step three.  *See Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990); *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

The ALJ considered whether Plaintiff's impairments were the same or equivalent to the criteria in Listing 11.03 for non-convulsive epilepsy.[3]  (Tr. 18).  Listing 11.03 requires:

> a documented, detailed description of a typical seizure pattern including all associated phenomena, occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.03.

Section 11.00 A of the Listing provides further:

> At least one detailed description of a typical seizure is required. Such description includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena. ... a severe impairment is considered present only if it persists despite the fact that the individual is following prescribed anticonvulsive treatment.

The ALJ determined Plaintiff did not meet Listing 11.03 because there was no conclusive evidence she ever experienced seizures, and her possible seizures were not accompanied by

---

[3]

The SSA's Program Operations Manual states, "although narcolepsy and epilepsy are not truly comparable illnesses, when evaluating medical severity, the closest listing to equate narcolepsy with is Listing 11.03, Epilepsy."

incontinence or tongue biting.  (Tr. 17-18).  Further, the ALJ noted her sleep study showed she had sleep apnea, she had "either run out of her anti-seizure medication or had not taken it for weeks at a time," and there was no evidence her condition significantly interfered with her activity during the day because her sleeping spells primarily occurred at night.  (Tr. 18).

A review of the record shows there was substantial evidence to support the ALJ's conclusion Plaintiff did not meet Listing 11.03.  Plaintiff underwent an EEG in March 2000, which revealed "no definite epileptiform features, but possible distant seizure focus."  (Tr. 314-315).  An MRI of her brain in April 2000 was normal.  (Tr. 307).  In November 2000, Plaintiff returned to the ER and claimed she had experienced a seizure.  Plaintiff underwent a CT scan of her brain, which was normal, and she was prescribed clonazapam by Dr. Robert Fry.  (Tr. 394-395, 397).  Dr. Fry noted she could have had an akinetic seizure or her symptoms could have been feigned, and he referred her to a neurologist.  (Tr. 395).

Plaintiff did not seek treatment for her condition again until September 2009 when she saw Dr. Jerry Stringfellow, who initially suspected abnormal thyroid, fatigue, altered mental status, or seizure disorder were possible diagnoses.  (Tr. 325-329).  Although Dr. Stringfellow did not conclusively diagnose seizures or narcolepsy, he prescribed the seizure medication, Depakote, and the thyroid medication, Synthroid.  (Tr. 328).  Plaintiff underwent an EEG and MRI of her brain a few days later.  Dr. Jean Thomas opined her EEG was normal, although he noted a "normal EEG doesn't rule out a seizure disorder."  (Tr. 293).  Dr. Alan Jean reviewed Plaintiff's MRI of her brain and found it was normal.  (Tr. 298).  After receiving Plaintiff's MRI and EEG results, Dr. Stringfellow changed his diagnosis to hyperthyroidism on October 9, 2009.  He increased Plaintiff's Depakote and Synthroid to a therapeutic range, although he noted Plaintiff claimed her seizures had

already decreased substantially.  (Tr. 322-323).

In April 2011, Plaintiff  again sought treatment for her seizures.  She underwent an EEG, which was normal according to Dr. Khalid Malik, a neurosurgeon.  (Tr. 361).  She also  underwent an MRI of her brain in May 2011, which Dr. William Brown opined was normal.  (Tr. 364).   On April 20, 2011, Plaintiff underwent a sleep study.  (Tr. 420-421).  After reviewing the study, Dr. Christopher Bailey's opined Plaintiff had "upper airway resistance syndrome/obstructive sleep disorder breathing."  (Tr. 421).  He recommended positive pressure ventilatory support at night and suggested Plaintiff needed a CPAP/BiPAP titration study to determine the optimal level of positive pressure ventilatory support necessary.  (Tr. 421).  On May 3, 2011, Plaintiff saw Dr. Malik for a follow up.  Plaintiff reported she had not had seizure for more than two weeks even though she believed she normally had seizures five to six times a month.  (Tr. 411).  Plaintiff did not see Dr. Malik again.  The final relevant record was an ER visit in September 2011 when she was treated for a toothache.  It was noted Plaintiff was not taking any medications except for Motrin, and her seizures were controlled.  (Tr. 583).

The record indicates Plaintiff's seizure symptoms were reduced when she took her medications, which by itself was enough evidence for the ALJ to conclude her condition did not meet a listing.  *See Carlson v. Astrue*, 604 F.3d 589, 594 (8th Cir. 2010).  Listing 11.03 also requires a demonstration of seizures occurring "more frequently than once weekly in spite of at least three months of prescribed treatment."  Plaintiff's treatment history precludes her from meeting the requirements of Listing 11.03 because she never received three months of treatment for her condition, and she most recently reported her seizures were too infrequent to meet the listing.

Accordingly, the Court finds the ALJ's step three determination  is supported by substantial

evidence in the record.

**C. Credibility Determination:**

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929.  *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007).  The factors to consider are: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions.  *Polaski*, 739 F.2d at 1322.

When discounting a claimant's subjective complaints, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors.  *See Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998).  The ALJ is not required to discuss each factor as long as the ALJ acknowledges and examines these factors before discounting the claimant's subjective complaints.  *Lowe v. Apfel*, 226 F.3d 969, 971-72 (8th Cir. 2000).  As long as the ALJ properly applies these factors and gives several valid reasons for finding Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference.  *See id*.; *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).  The ALJ, however, cannot discount Plaintiff's claims solely because the objective medical evidence does not fully support the subjective complaints.  *Polaski*, 739 F.2d at 1322.

The ALJ addressed the *Polaski* factors and identified inconsistencies between Plaintiff's testimony and the record.  (Tr. 19-24).  The ALJ found Plaintiff's description of her sleeping spells at night and her trouble waking in the morning to be generally believable, but found her credibility was undermined by her failure to seek treatment and her inconsistent medication use.  (Tr. 23).  The

ALJ highlighted a note from a June 2010 ER visit, which showed Plaintiff had not refilled her seizure medications. (Tr. 23, 376). Although Plaintiff attributed her failure to refill her medications to financial distress, the ALJ noted she continued to smoke heavily. (Tr. 23, 36, 376). The ALJ also identified Plaintiff's overall failure to seek treatment for her seizure symptoms, failure to have a recommended CPAP/BIPAP titration study in 2011, and her failure to submit a seizure report as factors against her credibility. (Tr. 17, 23, 414, 596). The ALJ's findings are valid reasons supporting the credibility determination. *See Lowe*, 226 F.3d at 971-72.

Plaintiff argues her non-compliance was entirely explained by her financial distress. (ECF No. 10 at 14-16; Tr. 36).

An ALJ should consider a claimant's failure to seek treatment in the context of her financial condition. When a person is unable to follow a prescribed regimen of medication and therapy to combat her disabilities because of financial hardship, the hardship may be taken into consideration when determining whether to award benefits. *See Tome v. Schewiker*, 724 F.2d 711, 714 (8th Cir. 1984). Here, hardship does not explain Plaintiff's lack of treatment and non-compliance. There was no evidence Plaintiff sought medication and was refused because of her inability to pay, and Plaintiff apparently had sufficient resources to purchase cigarettes, which counters her claim she could not purchase medications for financial reasons. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992). The record further indicates Plaintiff did not consistently take her seizure medications even when she filled her prescriptions. (Tr. 201, 210, 253). The ALJ also based his determination on other reasons, including Plaintiff's conservative treatment, her normal 2009 and 2011 MRI and EEG studies, and the fact Plaintiff went without medication or care for nine years after first reporting her seizures even though she was insured at the time. (Tr. 235, 293, 298, 307 331, 361, 365, 414).

There was substantial evidence indicating Plaintiff failed to seek or maintain treatment for reasons unrelated to her financial position, which the ALJ discussed.   A claimant's financial condition and reasons for non-treatment are questions the ALJ is in the best position to decide.  *See Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987).  Here, the ALJ identified specific, appropriate reasons for discounting her testimony, and the determination is entitled to deference.  *See Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012)

### D. Hypothetical Question to the VE

Plaintiff argues the hypothetical question posed by the ALJ was defective because it failed to include Plaintiff's symptoms associated with her narcolepsy, chronic fatigue, day time sleepiness, and altered mental state.  (ECF No. 10 at 19).  The non-exertional seizure precautions included in the ALJ's hypothetical, however, accounted for all of these descriptions of Plaintiff's conditions and encompassed her documented neurological and sleep impairments.  It was not necessary for the hypothetical to mention each impairment and only needs to include an impairment's concrete consequences.  *See England v. Astrue*, 490 F.3d 1017, 1023-24 (8th Cir. 2007).

The ALJ's hypothetical question accounted for all restrictions the ALJ accepted as true which were supported by the record as a whole.  *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005).  The VE stated Plaintiff could perform her PRW.  Such testimony, based on a hypothetical question consistent with the record, provided substantial evidence to support the ALJ's decision.

### IV.   <u>Conclusion</u>:

Based on the foregoing, I find the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed.  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

Dated this **15**[th] **day of January 2015.**

/s/  Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE